IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| DEBRA BLOOMER, Individually and as Mother and Guardian of JONATHAN BLOOMER, a Minor ) ) ) ) Plaintiffs, ) ) vs. ) ) BRIDGESTONE FIRESTONE NORTH ) AMERICAN TIRE, LLC, A Tennessee ) Limited Liability Company, ) ) Defendant, ) | Case No. 8:05CV00503<br><br>**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE EXPERT TESTIMONY OF DAVID OSBORNE** |

TO THE HONORABLE JUDGE OF SAID COURT:

Comes Now Debra Bloomer, Plaintiff in the above numbered action, and files her Brief in Opposition to Defendant's Motion to Exclude the Expert Testimony of David Osborne, and for such would respectfully show unto the Court as follows:

**FACTS**

Plaintiff, Debra Bloomer ("Plaintiff") and her son were injured in an automobile accident that occurred on November 8, 2001 in Cass County Nebraska. Her claim against the Defendant Bridgestone Firestone Tire ("Defendant") is based on the allegation a tire manufactured by the Defendant and mounted on her vehicle suffered a "blow-out", which caused the vehicle to roll and injured her and her son. It is also her allegation the blow-out was caused by a defect in the tire manufactured by Defendant.

Plaintiff has identified David Osborne as one of her expert witnesses. Mr. Osborne plans to testify giving his expert opinion on the alleged defective tire. Specifically, Mr. Osborn plans to give his opinion that the tire was defective in manufacture or design because the "polyester cords of the two polyester plies were

1

touching, they were in contact with each other. And during the course of usage as the tire was being used, the polyester cords actually frayed against each other causing them to break and causing the sidewall to blow out and explode" (Dep. of David Osborne, 138:19-25, hereafter "Osborne, p.__").

## INTRODUCTION

Defendant has filed a Motion to Exclude Testimony of David Osborne, as well as a Brief in Support of that Motion. In that brief, Defendant argues this court must exclude Mr. Osborne's expert testimony because (1) Mr. Osborne cannot offer any relevant testimony, (2) Mr. Osborne is not qualified to give expert testimony, and (3) Mr. Osborne's opinion is not reliable. More specifically, Defendant asserts Mr. Osborne cannot offer any relevant testimony because the evidence does not support his opinion, and that Mr. Osborne is not qualified to give expert testimony because Mr. Osborne lacks a university education, particular specialized training, or particular professional affiliations. Finally, Defendant asserts Mr. Osborne's opinion is not reliable because Mr. Osborne (1) has conducted no testing to support his opinion, (2) has no scientific studies to support his opinion, (3) has not subjected his opinion to peer-review, and (4) cannot establish the rate of error for his opinion and methodology. Defendant also asserts Mr. Osborne's opinion is not reliable because his opinion and methodology are not accepted in the relevant scientific community. These contentions by Defendant are without merit, and this Court should conclude Mr. Osborne is qualified to give the above-identified expert opinion.

## ARGUMENT

Since Mr. Osborne is not proposing to give "scientific evidence" as that term was used in *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), but rather "technical" or "experienced-based" evidence, the Supreme Court's reasoning in *Kumho Tire Company Ltd. v. Carmichael*, 526 U.S. 137 (1999) is most directly related to this question. *Kumho* established three guiding principles when a trial court is considering the admissibility of expert, technical evidence, especially testimony related to tire defects:

1. In the case of technical testimony, reliability "may focus upon personal knowledge or experience". *Kumho,* 526 U.S. at 150.

2. Tire abuse "may often be identified by qualified experts through visual or tactile inspection of the tire". *Id*, at 156.

3. The four factors identified in *Daubert* for assessing reliability were primarily intended for scientific evidence, and that technical or experienced-based testimony may require other tests of reliability. *Id*, 149-151.

The application of these guidelines to Mr. Osborne's proposed testimony makes it clear his testimony should be permitted.

First, Mr. Osborne has demonstrated the requisite "personal knowledge and experience" in tire design and manufacture. Affidavit of David Osborne, paragraphs 1-15. (Hereafter "Aff., p. __") While Defendant devotes considerable space in its brief to the argument that Mr. Osborne lacks formal education or university degrees, his 35 years in the employment of Cooper-Avon Tyre Co. Ltd working on failed tire analysis satisfies the qualification standard discussed in *Kumho*. Indeed, on this issue the somewhat wry opinion of the District Judge in *Tungate v. Bridgestone Corporation*, 2004 WL 771191 (S.D. Ind. 2004) is helpful. There, Bridgestone sought to exclude the

testimony of Plaintiff's expert, H.R. Baumgardner, in part because he lacked an engineering degree. The Court found his testimony admissible, based on his experience as a tire engineer for the Firestone Tire company. The Court characterized the Defendant's challenge to Baumgardner's qualifications as being "based on an unusually lopsided presentation that focused primarily on credentials Baumgardner does not have rather than those he does, in terms of training and experience." *Id.* P.3. It is noteworthy that this is the same "non-degree" Baumgardner cited by the Supreme Court in *Kumho* for the principle that "Nor does anyone deny that, as a general matter, tire abuse may often be identified by qualified experts through visual or tactile inspection of the tire. See Affidavit of H.R. Baumgardner ...." 526 U.S. at 156.

The same observation may be made about Defendant's attack on Mr. Osborne's qualifications. Rather than focusing on the extensive experience Mr. Osborne has in tire design, manufacture, and failure analysis demonstrated in his Affidavit, paragraphs 9-15, Defendants have attacked his lack of formal education. That attack is simply misplaced and misguided in a *Daubert* hearing such as this.

Second, Mr. Osborne has identified the methodology used in reaching his expert opinion. As noted in *Kumho*, failed tire analysis is often the result of personal inspection of the failed tire. Mr. Osborne stated in his affidavit that he conducted an inspection of the failed tire in this case. He further stated that he employed methods for such inspection learned in his experience and training at Cooper-Avon, and that these methods are the same as those used by other experts in the field. Aff. p. 17. Specifically, Mr. Osborne stated that part of those methods included the use of a digital microscope to examine the polyester cords in the failed tire. Aff. p. 21. Based on this

4

examination he concluded the polyester cords in the failed tire were touching, and lacked the rubber layer normally inserted between the polyester cords to avoid such touching. Aff. p. 21-22  He also stated in his affidavit that it is an industry-wide practice to insert such rubber coating of the polyester cords to prevent early separation of plies. Aff. p. 21-24.  Mr. Osborne also stated in his affidavit that it remains industry practice to insert rubber insulation between polyester cords, and he produced a cross section of a representative tire of current manufacture that exhibits such rubber insulation. Aff. p. 25.

These statements satisfy the second *Kumho* guideline, namely, that a "qualified expert" conducted a "visual or tactile" examination of the failed tire.

Defendant in its brief contends, time and again, that Mr. Osborne's opinions have not passed the "reliability" tests of *Daubert*, such as peer review, testing with established rates of error, or acceptance by the scientific community.  As the third guideline discussed above states, the *Kumho* Court specifically held that the *Daubert* tests for scientific evidence are not automatically applicable to technical, experienced-based testimony.  No doubt because the Defendant is aware of this, it contends that "Regardless of *Kumho Tire*, this opinion is obviously about science and involves scientific principles." (Brief of Defendant, p. 14).  Plaintiff disagrees.  Mr. Osborne's testimony and opinion are based exclusively on his training and experience.  He does not hold himself out in this case as an expert that tests tires to determine if a theory about tire failure can be proved in the testing lab.  He is not in this case formulating a theory about tire failure for acceptance by the scientific community.  He simply states that based on his experience in the tire industry, it is accepted practice to design and build tires in a particular manner, specifically, for belted radial tires to be designed and

built with rubber coatings that protect polyester cords from touching one another when the tire is inflated and in service. (Aff., p. 21-25). Based on this experience, he further states that the accepted reason for the rubber coating in belted radial tires is to minimize the risk of tire failure caused by cords rubbing against each other while the tire is inflated and in service. *Id.* Finally, based on his visual and tactile inspection of the failed tire in this case, Mr. Osborne states that the tire fails to conform to industry practice because at key locations, including the location near where the blowout occurred, it lacked the required rubber insulation between the cords. *Id.*

As Rule 702 of the Federal Rules of Evidence makes clear, the primary purpose of expert testimony is to assist the jury in areas where it would not ordinarily have knowledge or experience of its own. *See Fox v. Dannenberg*, 906 F.2d 1243, 1256 (8th Cir. 1990): "[T]he central issue is whether the expert's testimony will assist the trier of fact. The weight of the testimony is for the trier of fact." Plaintiff believes the manner in which belted radial tires are manufactured is such an area. Mr. Osborne is clearly an expert with specialized knowledge of that manufacturing process, and as a result his testimony will assist the jury in its determination of the ultimate question, i.e., was the tire mounted on Plaintiff's vehicle defective.

This is not to say Mr. Osborne's testimony need not be shown to be reliable. The *Kumho* Court clearly rejected the 11th Circuit's conclusion that the *Daubert* gatekeeping function of the trial judge was not applicable to purely technical testimony. However, *Kumho* expressly stated that reliability need not be determined exclusively by the *Daubert* standards; reliability may be established by alternative standards.

A recent example of a District Court properly conducting a reliability analysis of tire experts and their testimony is *McCloud ex rel Hall v. Goodyear Dunlop Tires, LTD*, 479 F.Supp.2d 882 (C. D. Ill. 2007). There, a plaintiff's tire experts (Woerhle and Derian) proposed to testify about a tire's defective condition. The District Court evaluated their methodology to determine if their testimony met the reliability requirements set by *Daubert*. The experts established their qualifications based on their experience in the tire manufacturing industry. The Court said this about their methodology:

> Woehrle and Derian each employ visual and tactile inspection of the failed tire as the primary basis for their conclusions. For example, Derian observes that the carcass ply cords are surrounded by the wrong kind of rubber (interliner rubber, instead of carcass ply rubber), and that the rubber is too thin.
>
> * * * *
>
> Woehrle and Derian also employ visual and tactile inspection as the primary basis for their conclusion that the tire did not fail due to abuse. For example, neither of them observed any physical signs of overdeflection in the subject tire. 479 F.Supp.2d at 890.

The Court then tied the experts' visual and tactile inspection of the subject tire to their experience to determine the methodology used:

> Therefore it appears that Woerhle and Derian each formed their conclusions by comparing the physical evidence before them against the knowledge they have acquired from their experience in tire failure, testing, and manufacturing. *Id.*

The Court then concluded the methodology employed by the experts satisfied the *Daubert* requirements as stated in *Kumho*, and found their testimony admissible.

7

A similar result should obtain here. Mr. Osborne inspected the tire that failed in this case, using accepted methods, including a microscopic examination of the polyester cords in the area adjacent to the area where the blowout appeared. (Aff. p. 21). He stated that as a result of that inspection he found that polyester cords of ply #1 and ply #2 were touching. (*Id*). Based on his experience inspecting over 8000 cases of tire failure "including hundreds of tires similar to the one that failed in this case" (Aff. p. 14), and his knowledge of the standards for manufacturing belted radial tires (Aff. p. 25), he concluded the tire failed because of the touching of polyester cords and the resulting weakness in the tire. (Aff. p. 21).

Mr. Osborne also inspected the tire to determine if the blowout could have been caused by abuse of the tire during the time it was in service, either by under-inflation or overloading, together generally called "overdeflection" (Osborne, p. 135:6-13). Based on his inspection, he stated that the tire did not have the necessary signs of overdeflection, such as unusual tread wear on both shoulders of the tire or chafing on top of the rim flange. (*id*, 133:6-13). He therefore concluded the tire had not been the subject of overdeflection. (*Id*, 136:2-4).

Mr. Osborne, like the tire experts in *McCloud*, inspected the failed tire here, found it was physically deficient based on both his experience and accepted industry standards, and eliminated other potential causes of the tire failure. This methodology was found to be sufficiently reliable in cases like *McCloud*, and should be found sufficiently reliable here.

Moreover, contrary to contentions made by Defendant in its Brief, p. 25-26, Mr. Osborne has in fact relied on supporting studies for his opinion that belted radial tires

require rubber insulation between polyester cords. The Curtis paper, Ex. 5, and the Turner and Ford paper, Ex. 6, both specify that rubber inserts must be placed between polyester cords in belted radial tires in order to deflect the stress from inflation and service from adversely straining the cords. Indeed, the Curtis paper contains a formula that produces the required size of the rubber insert. Ex. 5, at p.88).

Finally, Defendant attacks Mr. Osborne's reliability based on his answer to a question put to him at the deposition taken by Defendant. Defendant states, on page 24 of its Brief, that Mr. Osborne "admits" he has not "'deliberately' done any testing of steel-belted radial tires where the body ply cords were in close proximity to one another to see if that had any effect on tire durability." This greatly misrepresents Mr. Osborne's answer. In fact he said:

> A. Not deliberately. I've actually tested tires where, in fact, there have been body ply cords touching and the tires actually failed because of cord fretting.

(Dep. Osborne, p. 259:16-19)

No doubt the absence of specifically directed tests for the consequences of touching cords will be a factor in Defendant's arguments about the weight to be given Mr. Osborne's opinions. Cross-examination can be used to probe more deeply into Mr. Osborne's experience with failed tires with touching cords. That is of course what trials are for. But for present purposes, his answer makes it clear he has in fact observed tires that failed because of circumstances identical to those in the subject tire in this case. This is not a case of opinion evidence "that is connected to existing data only be the *ipsi dixit* of the expert." *General Electric Company v. Joiner*, 522 U.S. 136, 146 (1997). Unlike the experts in *Joiner*, who had no experience or studies connecting their theory to the "existing data", here Mr. Osborne connected the "existing data", gleaned

9

from both his extensive experience and his inspection of the failed tire, to his opinion. That is, he established the relationship between touching cords in the subject tire and his experience with failed tires. Whether or not the jury is convinced by his opinion is not the issue here. He has demonstrated a methodology, and connected it to his experience to conclude this tire was manufactured in a defective manner. That is all *Daubert* and *Kumho* require.

Defendant cites several cases on pages 16-17 of its Brief for the proposition that Courts are not reluctant to exclude expert testimony on alleged tire defects. Of course, every case depends on its own facts, *Daubert*, 509 U.S. at 591, but an examination of the cases relied upon by Defendant makes it clear they provide no guidance to this Court. Plaintiff believes it is worth the Court's time to recount here the results of such an examination.

The first case cited by Defendant, after the *Kuhmo* case, is *Smith v. The Goodyear Tire & Rubber Company*, 2007 WL 2200700. This case involved an expert who had never worked in or been associated with the tire manufacturing industry "in any capacity" before becoming an "expert" in that case. Specifically, the supposed expert had never examined a tire professionally before the tire he examined in that case. No case could be more inapplicable to the facts of this case than *Smith*.

The expert who proposed to testify in *Allen v. LTV Steel Co.*, 2003 WL 21461633 had not physically inspected the alleged defective tire, but based his opinion on the tire's physical condition solely on reports of the condition of other tires that had failed under similar conditions. Because those other failures were the result of a specific cause, the expert concluded the failed tire in that case must have resulted from the

10

same cause. The faults inherent in that logic are legion. Here, Mr. Osborne did inspect the failed tire, found physical evidence of a defect, and based on his experience connected that defect to the tire's failure.

In *Hauck v. Michelin N. Am. Inc.*, 343 F. Supp 2d 976 (D. Colo. 2004) the expert, an engineer, proposed to testify that a failed tire was due to an "adhesion defect" in the manufacturing process. The supposed expert admitted that he had never worked in the tire manufacturing industry, or consulted in that industry. In fact, he admitted he was not an expert in tire design or manufacture. He conceded he knew nothing about how steel belted radial tires were made, or the processes used to put them together. Finally, he agreed he had never under any circumstances tested a tire to determine belt or tread separation. These qualifications, or the lack thereof, are clearly unlike Mr. Osborne's qualifications in the present case.

*Rivera-Pomales v. Bridgestone/Firestone, Inc.*, 217 F.R.D. 290 (D.P.R. 2003) involved the failure of a Steel Tex A/T tire mounted on a Ford Excursion, as was the case here. The expert called by the plaintiffs was a mechanical engineer with no experience or background in the tire design or manufacturing industry. He admitted he was not a tire expert. Indeed, as the Court noted, he stated he refused to follow tire expert methodology because he considered it "silly".

*Prince v. Michelin N. Am., Inc.* 248 F. Supp. 2d 900 (W.D. Mo. 2003) involved an expert with no tire experience, but with knowledge of polymer materials. While the Court permitted him to testify about the chemical make-up of polymers involved in the tire manufacturing process, it held that his complete ignorance of that process prevented him from qualifying as an expert on tire failure.

In *Diviero v. Uniroyal Goodrich Tire Co.*, 919 F. Supp. 1355 (D. Ariz. 1996), *aff'd* 114 F.3d 851 (9ʰ Cir. 1997) the expert did have some experience in the tire manufacturing industry, but only for bias tires. He had never worked on or tested steel belted radial tires, the kind of tire that failed in that case. Moreover, his opinion involved the chemical composition of the tire, and he admitted he knew very little about the principles of chemistry.

In *Meyerhoff v. Michelin Tire Corp.*, 852 F. Supp. 933 (D. Kans. 1994, *aff'd* 70 F.3d 1175 (10th Cir. 1995) the plaintiff's expert was actually permitted to testify about the adequacy of a warning about tire risks. The expert stated that a warning on the sidewall of the subject tire would have been "better than nothing". The only reference to the expert's qualification to testify about safety warnings comes in footnote 17 of the opinion, in which the District Judge stated he now wishes he had excluded the "expert's" testimony. Plaintiff fails to see any possible relation this case has to the case here.

*Cooper Tire & Rubber Co. v. Mendez*, 204 S.W.3d 797 (Tex 2006) is a case involving Texas evidentiary rules, not the Federal Rules of Evidence. For that reason, it has questionable applicability. Even if found relevant, it is totally unlike the case here. The expert there proposed to testify that the cause of a tire failure was "wax contamination" in the manufacturing process. However, the expert provided no basis for the assumption that the wax in the tire was present during the manufacturing process, as opposed to migrating to the point of tread separation from parts of the tire where wax is intentionally placed to protect against ozone damage. Moreover, the expert's opinion on how wax in the tire caused the tire failure, even if one assumed such wax was there during manufacture, was based on the chemical reaction of the wax and

12

other tire components. The expert agreed he knew nothing about chemistry, and indeed relied upon reports from established chemists, reports that when analyzed included conclusions contrary to those of the supposed expert. Here, Mr. Osborne's testimony is based solely on his specialized knowledge of the tire design and manufacturing process. The defect in the tire that failed here, unlike the tire in *Mendez*, was without question present in the tire from the moment of its manufacture. Moreover, Mr. Osborne's opinion about the effect of that defect on the tire's performance and failure is based solely on his own experience, not the experience of others.

As should be evident by now, there is a thread that runs throughout all the above cases cited by Defendant on pages 16 and 17 of its Brief, and that thread has little to do with the reliability of a qualified expert's testimony. In each of the cases discussed above, it is clear the expert was excluded either because he did not demonstrate the qualifications needed to give expert testimony, or failed in the most obvious sense to follow tire failure methodology. In most of the cases, the supposed expert lacked even the remotest experience in tire design or manufacturing. None of these cases are of any help to this Court in evaluating the expert testimony to be given by Mr. Osborne.

*The Goodyear Tire & Rubber Co. v. Rios*, 143 S.W.3d 107 (Tex. App. 2004) does involve reliability, although it also involved Texas law on expert testimony, not the Federal Rules applicable in this case. Interestingly, in *Rios* the expert had qualifications similar to those of Mr. Osborne, that is, extensive experience in the tire industry in Great Britain. The Court concluded the expert had the qualifications to give expert testimony, but excluded his testimony because it was not shown to be reliable. There, a vehicle owner purchased a 9 year old used tire with 35-40,000 miles on it. The tire had been

13

punctured at least 4 times, and repaired by only a patch instead of a plug. The tire separated during operation, and the expert proposed to testify that inadequate adhesion between the brass cables and rubber parts of the tire caused the failure. The court held that given the age of the tire the expert failed to exclude other potential causes of the tire failure, and also that his theory about lack of adhesion depended not on his experience in the tire manufacturing process but on pure speculation.

Mr. Osborne is of course in a different category all together. He is not advancing a novel theory about how tires should be built. Rather, he will testify that in his experience belted radial tires are built in accordance with accepted industry standards, and that the tire that failed in this case did not meet those standards. He is either right or wrong about that depending upon his experience, but if his experience discloses an industry practice consistent with his testimony, he is qualified to give the jury the benefit of his experience.

That leaves *Kumho*, also cited on page 16 of Defendant's brief. The trial court in *Kumho* excluded the testimony of plaintiff's tire expert, concluding his conclusions lacked reliability. The Supreme Court agreed with the basis for the trial court's conclusion that the expert's opinion lacked reliability. What the Court said about the basis of the expert's opinion and its relation to the reliability requirement is vital to understanding the result reached in that case.

First, as noted earlier in this Brief, the Court made it clear the visual and tactile inspection of a tire was in general an acceptable methodology for tire defect cases. 526 U.S. at 153-154. It also stated that the problem with the expert's opinion was not "...the general theory that, in the absence of evidence of abuse, a defect will normally have

14

caused a tire's separation." *Id.* Instead, the Court concluded the expert did not use the accepted methodology "…. to determine the cause of *this* tires separation." *Id*, (emphasis in the original).

The tire in question, the Court noted, was partially bald from wear, concededly should have been taken out of service, had been inadequately repaired for punctures, and bore some of the marks of abuse through overdeflection. *Id.* The problem with the reliability of the expert's conclusion, the Court said, was that he employed a more specific theory than the general theory alluded to above: "Carlson [the expert] testified precisely that in the absence of *at least two* of four signs of abuse (proportionately greater tread wear on the shoulder; signs of grooves caused by the beads; discolored sidewalls; marks on the rim flange), he concludes that a defect caused the separation." *Id.*

Mr. Osborne's conclusions in this case bear no resemblance to the conclusion reached by the expert in *Kumho*. First, unlike that expert, Mr. Osborne is not basing his opinion that the subject tire was defective solely on the absence of **some** signs of abuse. Indeed, he is not basing his opinion solely on the absence of any signs of overdeflection, even though he stated the tire contained no such signs (Osborne, 133:6-13), and even though the *Kumho* Court clearly suggested that such a general theory would be acceptable. Rather, he is basing his conclusions on a fact determined by his inspection of the failed tire: the tire was designed or manufactured without the presence of rubber coatings between the polyester cords. Thus, unlike the expert in *Kumho*, Mr. Osborne is using the accepted methodology, inspection of the failed tire, to produce the

15

reasons for his conclusion. If *Kumho* applies at all to this case, it supports the reliability of Mr. Osborne's conclusions.

From the above discussion, Plaintiff believes she has shown that Mr. Osborne's testimony will assist the jury in determining if the subject tire was defective, that his methodology is sound, and that his conclusions are reliable. Plaintiff would also admit that this case presents difficult proof problems, due to the fact that the subject tire has been damaged after the accident in a manner that makes perfect investigation difficult. For example, the parties clearly differ on whether abrading of the tire near the location of the blowout occurred during the accident sequence, or during the towing that occurred after the accident. Based on his inspection of the tire, and his knowledge of how tire damage occurs, Mr. Osborne concluded that abrading occurred during the time the vehicle was being towed. If that question is important, and Plaintiff is not conceding it is, the jury will obviously need all the help it can get to answer the question. Mr. Osborne is qualified to give them that help. Cross-examination, and presentations by Defendant's own experts, can be used to determine how much that help is worth.

## CONCLUSION

Plaintiff has demonstrated Mr. Osborne is qualified to give expert testimony on tire failure. *Kumho*, and cases like it in the Eighth Circuit make it clear experience alone may qualify a person to give technical expert testimony. *See e.g. Circle J. Dairy, Inc. v. A.O. Smith Harvestore Products, Inc.*, 790 F.2d 694 (8th Cir. 1986). He has followed the accepted methodology for tire failure analysis. His opinions are directly related to that methodology and the accepted design and manufacturing standards for the production of belted radial tires.

In addition, by way of buttressing Mr. Osborn's conclusions, Plaintiff will introduce evidence of a person who viewed the subject tire while it was on the vehicle, and before it was towed away. This witness will testify that the subject tire had a hole in the outer sidewall that looked like a blowout. Plaintiff will also introduce evidence that the subject tire was one of a model produced by Defendant that was the subject of a recall at the time the blowout occurred, and that the letter to the NTHA advising it of the recall listed the reason for the recall as the sudden loss of air in the tires. Mr. Osborne's testimony will clearly assist the jury in determining if the subject tire, given this additional evidence, was defective. For that reason, his testimony should not be excluded.

WHEREFORE, Plaintiff moves the Court for an order overruling Defendant's Motion to Exclude the Expert Testimony of David Osborne.

DATED this ____ December, 2007.

> DEBRA BLOOMER, Individually, and as Mother and Guardian of JONATHAN BLOOMER, a minor, Plaintiffs,
>
> By:s/Timothy J. O'Brien. #16011
> Terry Anderson, # 10102
> HAUPTMAN, O'BRIEN, WOLF
>   & LATHROP, P.C.
> 1005 S. 107th Avenue, Suite 200
> Omaha, Nebraska 68114
> (402) 390-9000
>   and
> William Frates
> 830 Azalea Lane
> Vero Beach, Florida 32963
> (772) 231-5896
> ATTORNEY FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I hereby that on the 13th day of December, 2007, I electronically filed the foregoing with the clerk of the court using the CM/ECF system which sent notification of such filing to the following:

Daniel P. Chesire
Lamson, Dugan & Murray LLP
10306 Regency Parkway Drive
Omaha, NE 68114

Scott G. Edwards
Hartline, Dacus, Barger
Dreyer & Kern, L.L.P.
6688 North Central Expressway
Suite 1000
Dallas, Texas 75206

s/TimothyJ. O'Brien , #16011