IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| DEBRA BLOOMER, Individually, | ) | Case No. 8:05CV00503 |
| And as Mother and Guardian of | ) | |
| JONATHAN BLOOMER, a Minor, | ) | |
| | ) | |
|     Plaintiffs, | ) | |
| | ) | DEFENDANT BRIDGESTONE |
| vs. | ) | FIRESTONE NORTH AMERICAN |
| | ) | TIRE, LLC'S REPLY TO PLAINTIFFS' |
| | ) | BRIEF IN OPPOSITION TO |
| BRIDGESTONE FIRESTONE NORTH | ) | DEFENDANT'S MOTION TO EXCLUDE |
| AMERICAN TIRE, LLC, | ) | EXPERT TESTIMONY OF DAVID |
| Tennessee Limited Liability Company, | ) | OSBORNE |
| | ) | |
|     Defendant. | ) | |

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Bridgestone Firestone North American Tire, LLC (hereinafter referred to

as "Firestone"), Defendant in the above-entitled and numbered cause, and makes and files this its

Reply to Plaintiffs' Brief in Opposition to Defendant's Motion to Exclude Expert Testimony of

David Osborne, and for such would respectfully show unto the Court as follows:

**I.**
**There is too Great a Gap Between Osborne's Opinion and the Evidence**

As noted by the United States Supreme Court, an expert's opinion should be connected to

existing data:

> [N]othing in either *Daubert* or the Federal Rules of Evidence
> requires a district court to admit opinion evidence which is
> connected to existing data only by the *ipse dixit* of the expert.  A
> court may conclude that there is simply too great an analytical gap
> between the data and the opinion proffered.

*General Electric Co. v. Joiner*, 522 U.S. 136, 118 S. Ct. 512, 519 (1997).  In *Joiner*, Plaintiff's

experts claimed Plaintiff obtained lung cancer due to his exposure to PCB's (polychlorinated

biphenyls). *Id.* at 139-140. Plaintiffs' experts relied on animal studies and epidemiological studies to support their opinion. *Id.* at 143-146. The District Court noted that none of the proffered studies truly supported Plaintiff's experts' opinions; the animal studies involved infant mice who were given extremely high doses of PCB's in their stomachs, and the epidemiologic studies were likewise irrelevant, as they either found no link between PCB's and lung cancer or the subjects were exposed to numerous other toxic substances in addition to PCB's. *Id.* at 144-146. The Supreme Court noted that although "trained experts commonly extrapolate from existing data," a court simply does not have to admit opinion evidence that has no connection to the existing data. *Id.* at 146.

Here, Osborne admits the **only basis** for his design defect opinion regarding the ply sidewall cords in the subject tire (besides his photographs of the ply cords) is his observations. Osborne Dep., p. 298.[1] He admits he has no testing or scientific studies supporting his opinion and further has no documents supporting his opinion. *Id.* at 18, 259, 270-271, 274, 279, 292. Osborne's "observations," the sole basis for his opinion, are of an area of the tire that no longer exists due to localized damage Osborne concedes occurred during towing of the vehicle after the accident. *Id.* at 205-206, 208, 210-212.

Given that Osborne's sole basis for his opinion is his "observations" of a *nonexistent* part of the tire, his opinion is not supported by the existing evidence.

**A.     Osborne Admits there is no Evidence of a Blowout**

Osborne admits **the area where he believes the tire sustained a blowout is an area on the tire that *no longer exists*.** *Id.* at 205, 208. Although he believes there was some type of "split" in that area, he admits there is no evidence of the "split" itself, and further admits the area

---

[1] Relevant portions of Osborne's Deposition are attached to Firestone's Brief in Support of its Motion to Exclude Expert Testimony of David Osborne at Exhibit A, on file with this Court. Such motion and exhibits are incorporated herein by reference in their entirety.

where he believes there was a "split" no longer exists. *Id*. at 205-206, 208. He admits the only

thing in that area of the tire is a hole, and further admits that kind of damage could occur from

the wheel being locked and the tire dragging:

> Q:    Could you get this kind of [alleged split] damage here from
>       the wheel being locked and the tire being drug?
>
> A:    **Yes. That's what happened**.

*Id*. at 206 (emphasis added).

> Osborne admits there is no physical evidence of a blowout on the subject tire:

> Q:    And so as the tire currently exists **there is no physical
>       evidence on the tire itself of an area where the tire blew
>       out that you can point to, is there**?
>
> A:    **No, there is not**.

Exhibit A, p. 206-207 (emphasis added).

## B.     Osborne Admits there is no Evidence of Broken Body Ply Cords

Osborne claims the tire "blew out" when certain body ply cords allegedly fractured or

broke after rubbing together because there was little or no rubber between the body ply cords.

*Id*. at 138, 204, 207, 255, 277-278. However, he did not do any analysis where he looked at the

tire under enhanced magnification to determine whether or not there is in fact rubber between the

body ply cords. *Id*. at 255, 277-278. Significantly, he admits there are no such "fractured" cords

such that they can be examined:

> Q:    Are there any body ply cords in the sidewall of this tire that
>       are fractured and not abraded that we can look at?
>
> A:    I can't find any, no.

Exhibit A, p. 207. He admits these alleged "broken cords" do not exist on the subject tire:

> Q:    And so these broken cords that you're describing are not
>       cords that are on this tire anymore, are they?

A:      That's correct.

Q:      And so **there are no broken cords on this tire that you can point to and say, this is where the tire blew out?**

A:      **You're right.**

*Id.* at 208 (emphasis added).  Further, Osborne cannot identify any body ply cords he believes are fretted as a result of cord-to-cord contact; if he had observed any such fretted cords, he would have so noted in his inspection notes (and he did not).  *Id.* at 261-262.

Osborne **admits the tire did not initially fail at the location where he took photographs of the allegedly touching body ply cords.**  *Id.* at 255-257, 259.  He further admits **the rubber abraded away in the location where he took such photographs when the wheel locked and the tire dragged.**  *Id.* at 258.

C.      **Osborne Admits there is No Evidence of Tire Run-Flat Damage**

Moreover, Osborne did not observe any run-flat damage on the subject tire.  *Id.* at 151. Osborne concedes the absence of run-flat damage is consistent with the tire not running flat with no air (i.e. after a blowout).  *Id.* at 297.  Osborne concedes that if a tire is run-flat with no air, you will not see localized damage in just one area of the tire (as it exists on the subject tire).  *Id.* at 295.  Osborne further admits he is not aware of any physical evidence on the road surface where the subject accident occurred that indicates there was a tire failure.  *Id.* at 124-25.  Nor is he aware of any physical evidence on the off-road surface that indicates there was a tire failure.  *Id.* at 125.  Osborne is not aware of any physical evidence of flat tire marks at the accident scene, including gouge marks on the road surface.  *Id.* at 129.  **Osborne admits the absence of gauge marks on the road would be consistent with the tire not running flat with no air.**  *Id.* at 298.

**D.    Osborne did not Rule out Locked Wheel Damage**

As referenced above, Osborne admits there is no physical evidence of a tire blowout in the area of the tire he observed, and further admits that the localized damage on the subject tire **occurred from the wheel being locked and the tire dragging**:

> Q:    Could you get this kind of damage here from the wheel being locked and the tire being drug?
>
> A:    **Yes. That's what happened**.

*Id*. at 206 (emphasis added). Further, Osborne admits that **if a tire sustained locked wheel abrasion damage, such damage would be localized to that area of the tire that was in contact with the road surface when the wheel locked**. *Id*. at 284. He agrees a tire can sustain locked wheel abrasion damage that abrades through the tread, both steel belts and the body ply. *Id*. at 285. Interestingly, **Osborne admits that all of the damage he sees on the subject tire is in a localized region** between 10 and 70 degrees on the tire (one-sixth of the tire). *Id*. at 167-169, 171. He agrees the subject tire's tread wear was uniform in the other areas of the tire (other than the 10 to 70 degrees location). *Id*. Osborne also observed damage to the subject tire's rim in the same 10 to 70 degrees location, noting, "There's certainly severe abrasion over probably six inches of the rim. The rim flange has been ground right down. It's flat." *Id*. at 171, 175. He opines the sidewall damage and the bend in the rim are related. *Id*. at 179-180.

Moreover, **Osborne opines that the subject tire's sidewall just happened to blow out in the exact same spot where there is locked wheel damage to the tire and locked wheel damage to the wheel which he now believes occurred during towing of the vehicle after the accident.** *Id*. at 181, 185, 210-212. He maintains this happened even though there is a "one in six chance" the "blowout" occurred in the same area where the tire sustained extensive damage

either as a result of the accident or towing. *Id.* at 185-86. He admits there is extensive abrasion in the area where he claims there was a blowout. *Id.* at 192.

Despite this huge "coincidence" and despite his testimony that the hole in the tire resulted from the wheel locking and the tire dragging, Osborne has not ruled out the possibility that the damage to the subject tire resulted entirely from the wheel locking and the tire dragging. He instead opines the subject tire sustained a blowout even though no evidence on either the tire or roadway supports such conclusion. A theory based on a "one in six chance" with no supporting physical evidence does not pass muster under *Daubert*.

## E.   Plaintiffs Misinterpret the *Joiner* Holding

Plaintiffs claim Osborne connected the "existing data" to his opinion, thus satisfying the requirement in *General Electric Co. v. Joiner* that opinion evidence not be "connected to existing data only by the *ipsi dixit* of the expert." 522 U.S. 136, 146 (1997). Plaintiffs' Brief in Opposition, p. 9. Plaintiffs claim this is true because Osborne claims to have tested tires which had touching body ply cords and failed due to cord fretting.[2] *Id.* Plaintiffs thus claim Osborne's testimony "makes it clear he has in fact observed tires that failed because of circumstances identical to those in the subject tire in this case." *Id.* In fact, Osborne testified this case is the **only** time he **ever** recalls concluding a tire sustained a sidewall blowout as a result of an alleged defect in the tire's sidewall ply cords. Osborne Dep., p. 283. Further, Osborne testified he has never done testing on a production steel-belted radial tire that would demonstrate sidewall ply cords in close proximity to one another can result in a sidewall blowout. *Id.* at 274. Osborne thus admits he has not seen any other tire "fail" in the same manner he alleges the subject tire "failed," or even done testing to demonstrate such a failure is feasible.

---

[2] As referenced above, Osborne concedes there is no physical evidence of fretted cords in the subject tire as a result of alleged cord-to-cord contact. Osborne Dep. p. 261-262.

Moreover, Plaintiffs misinterpret the *Joiner* holding. Even if Osborne had observed other tires which allegedly sustained sidewall blowouts when certain body ply cords fractured or broke after rubbing together because there was little or no rubber between such body ply cords (he admits he has not, *Id*. at 283), **Osborne's inspection of other tires does not constitute evidence that the *subject tire* sustained a sidewall blowout as a result of allegedly insufficient rubber between the body ply cords**. The fact remains that Osborne has **no physical evidence in this case** supporting his theory of sidewall blowout caused by allegedly touching body ply cords that fractured (and further has no testing, scientific studies or documents supporting such opinion). Osborne's opinion should be excluded because "there is simply too great an analytic gap between the data and the opinion proffered." *General Electric Co. v. Joiner*, 522 U.S. at 146.

## II.
## Osborne's Testimony is not Admissible under either *Daubert* or *Kumho*

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court held that Rule 702 applies its reliability standard to all "scientific," "technical," or "other specialized" matters within its scope. 509 U.S. 579, 589-590 (1993). Although the *Daubert* Court referred only to "scientific" knowledge, that Court stated it referred to "scientific" testimony "because that [wa]s the nature of the expertise" at issue. *Id*. at 590, n. 8. In *Kumho Tire Co., Ltd. v. Carmichael*, the Supreme Court noted it would prove difficult, if not impossible, for judges to administer evidentiary rules under which a gatekeeping obligation depended upon a distinction between "scientific" knowledge and "technical" or "other specialized" knowledge. 526 U.S. 137, 148 (1999). There is no clear line that divides the one from the others. *Id*. Disciplines such as engineering rest upon scientific knowledge. *Id*.

The Supreme Court held that some of *Daubert*'s questions can help to evaluate the reliability even of experience-based testimony. *Id*. at 151. In certain cases, it will be appropriate

for the trial judge to ask, for example, how often an engineering expert's experience-based methodology has produced erroneous results, or whether such a method is generally accepted in the relevant engineering community. *Id.* Likewise, it will at times be useful to ask even of a witness whose expertise is based purely on experience, say, a perfume tester able to distinguish among 140 odors at a sniff, whether his preparation is of a kind that others in the field would recognize as acceptable. *Id.*

In fact, the Supreme Court applied *Daubert* factors to their determination of the designated tire expert's reliability in *Kumho*:

> **We have found no indication in the record that other experts in the industry use Carlson's two-factor test** or that tire experts such as Carlson normally make the very fine distinctions about, say, the symmetry of comparatively greater shoulder tread wear that were necessary, on Carlson's own theory, to support his conclusions. **Nor, despite the prevalence of tire testing, does anyone refer to any articles or papers that validate Carlson's approach**.

*Id.* at 157 (emphasis added). It is clearly appropriate to apply *Daubert* factors to the proffered opinion of a tire expert, as the Supreme Court itself applied such factors in *Kumho*.

In this case, Osborne admits the **only basis** for his design defect opinion regarding the sidewall ply cords in the subject tire (besides his photographs of the ply cords in an area of the tire that was damaged and admittedly did not fail) is his observations. Osborne Dep., p. 298. These "observations," as referenced above, are in an area of the tire that **no longer exists** due to localized damage Osborne concedes occurred during towing of the vehicle after the accident. *Id.* at 205-206, 208, 210-212. He admits he has no testing or scientific studies supporting his opinion and further has no documents supporting his opinion. *Id.* at 18, 259, 270-271, 274, 279, 292. As noted by the Supreme Court in *Kumho*, there is a prevalence of tire testing; yet Osborne has no articles or papers supporting his opinion. 526 U.S. at 157.

The fact remains that Osborne: (1) has conducted no testing to support his opinion, (2) has no scientific studies to support his opinion, (3) has not subjected his opinion to peer-review, (4) cannot identify any tire expert anywhere in the world that has accepted his opinion and methodology, (5) cannot establish the rate of error for his opinion given his lack of testing, and (6) has no physical evidence of an alleged tire sidewall blowout. **Given that the sole basis for Osborne's opinion is his observations of a nonexistent area of the tire, his opinion is clearly unreliable under either *Daubert* or *Kumho*.**

### III.
### Plaintiff Makes Inaccurate Statements in her Brief in Opposition

In her Brief in Opposition Plaintiff makes several inaccurate statements which contradict Osborne's own deposition testimony.

### A.    Osborne Admits this is the *Only* Tire he has Ever Seen Allegedly "Fail" Like This

Plaintiff claims that "[b]ased on [Osborne's] experience inspecting over 8000 cases of tire failure 'including hundreds of tires similar to the one that failed in this case' . . . he concluded the tire failed because of the touching of polyester cords and the resulting weakness in the tire." Plaintiffs' Brief in Opposition, p. 8, citing to Osborne's Affidavit, ¶ 14. In fact, Osborne testified in his deposition that this case is the **only** time he **ever** recalls concluding a tire sustained a sidewall blowout as a result of an alleged defect in the tire's sidewall ply cords. *Id.* at 283. Further, he is not aware of any other Firestone Steeltex Radial A/T tire of the size and load range involved in this case that sustained a sidewall blowout as a result of an alleged defect in the sidewall ply cords. *Id.* at 282-284.

A party may not contradict prior sworn deposition testimony via a subsequent affidavit, except in narrow circumstances where a party explains certain aspects of prior deposition testimony or where the prior deposition testimony reflects confusion on the part of the witness.

*Herring v. Canada Life Assurance Co.*, 207 F.3d 1026, 1030-1031 (8th Cir. 2000); *Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361, 1365 (8th Cir. 1983); *Ode v. Omtvedt*, 883 F.Supp. 1308, 1318, n. 4 (D.Nebraska 1995).   Although these cases discuss contradicting affidavits in the summary judgment context, the same principal applies here; Plaintiff attempts to create additional support for Osborne's opinion after his deposition in order to defeat Firestone's Motion to Exclude.   However, the referenced portion of Osborne's affidavit does not merely explain certain aspects of his deposition testimony; it contradicts such testimony.   Further, Osborne's deposition testimony does not reflect any confusion on Osborne's part during the relevant questioning.   At the beginning of Osborne's deposition, Firestone counsel asked Osborne to let him know if a particular question was unclear:

> Q:   Mr. Osborne, if at any time my question is unclear or you do not understand it, will you stop and tell me that?
>
> A:   I will.
>
> Q:   Otherwise, I'll assume you understand what I'm asking you.  Is that fair?
>
> A:   That's fair.

Osborne Dep., p. 6.  Osborne did not indicate any of the questions to which he responded with the above testimony were confusing.   Paragraph 14 of Osborne's affidavit should thus be disregarded.

**B.   Osborne Admits there are no Industry Standards Regarding the Amount of Rubber Between the Belts**

Plaintiff claims that "[b]ased on [Osborne's] experience . . . **and his knowledge of the standards for manufacturing belted radial tires** . . . he concluded the tire failed because of the touching of polyester cords and the resulting weakness in the tire."   Plaintiffs' Brief in Opposition, p. 8, citing to Osborne's Affidavit, ¶ 25 (emphasis added).  In fact, Osborne testified

at his deposition that **he is not aware of any industry standard that requires a certain amount of rubber between the sidewall ply cords in a tire**. *Id*. at 138, 278-279. He cannot identify any written document that identifies standard custom and procedure in the tire industry for how much rubber should be between sidewall ply cords in a tire. *Id*. at 279. He does not have any document in his file which expressly concludes a tire is defective if its sidewall ply cords are in close proximity to one another. *Id*. at 270. In fact, he cannot identify any peer-reviewed literature indicating the amount of rubber that should be between the sidewall ply cords in a tire. *Id*. at 279.

Again, a party may not contradict prior sworn deposition testimony via a subsequent affidavit, except in narrow circumstances where a party explains certain aspects of prior deposition testimony or where the prior deposition testimony reflects confusion on the part of the witness. *Herring v. Canada Life Assurance Co.*, 207 F.3d 1026, 1030-1031 (8th Cir. 2000); *Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361, 1365 (8th Cir. 1983); *Ode v. Omtvedt*, 883 F.Supp. 1308, 1318, n. 4 (D.Nebraska 1995). The referenced portion of Osborne's affidavit contradicts rather than explains his deposition testimony. Further, Osborne's deposition testimony does not reflect any confusion on Osborne's part during the relevant questioning. Paragraph 25 of Osborne's affidavit should be disregarded.

## C.   Firestone did not Misrepresent Osborne's Testimony

Plaintiff claims Firestone misrepresents Osborne's testimony regarding whether he has done any testing of steel-belted radial tires where the body ply cords were in close proximity to one another to see if that had any effect on tire durability. Plaintiffs' Brief in Opposition, p. 9. In fact, not only did Osborne admit at his deposition he has not "deliberately" done any testing of steel-belted radial tires where the body ply cords were in close proximity to one another to see if

that had any effect on tire durability (Osborne Dep, p. 259), he also testified under oath at his deposition he has never done testing on a production steel-belted radial tire that would demonstrate that sidewall ply cords in close proximity to one another can result in a sidewall blowout, *which is his defect theory in this case*. *Id*. at 274. Moreover, Osborne testified this case is the **only** time he **ever** recalls concluding a tire sustained a sidewall blowout as a result of an alleged defect in the tire's sidewall ply cords. *Id*. at 283.

## IV.
## The Condition Referenced in the Curtis Paper does not Exist in the Subject Tire

In her Brief in Opposition, Plaintiff claims Osborne relied on supporting studies for his opinion that belted radial tires require rubber insulation between polyester cords. Plaintiffs' Brief in Opposition, p. 8-9. Plaintiff claims the Curtis paper and Turner and Ford paper both specify rubber inserts should be placed between polyester cords in belted radial tires. *Id*.

However, Osborne admits that the portion of the Curtis paper on which he relies does not address fretting of body ply cords. Osborne Dep., p. 269. The Curtis article states thin layers of rubber between tire plies must be of adequate thickness to prevent "early separation of plies." *Id*. at 263. **Yet Osborne admits there was not a separation of plies in the subject tire's sidewall.**[3] *Id*. at 139, 269. He further admits that the amount of rubber between the body ply cords in the area of the tire that he observed and photographed did not result in a separation between the sidewall plies in the subject tire. *Id*. at 269-270. Thus, even if the Curtis paper is accurate, **the condition the paper describes (separation of plies) admittedly did not occur in the subject tire**.

---

[3] *See also* Affidavit of David Osborne in Response to Defendant Bridgestone Firestone North American Tire, LLC's Motion to Exclude Expert Testimony of David Osborne ("Osborne Affidavit"), ¶ 21, where Osborne alleges a blowout occurred in the subject tire's sidewall rather than a separation of plies in the subject tire's sidewall.

Moreover, the Turner and Ford paper (Exhibit 6 to Plaintiff's Index) nowhere states that a tire can sustain a sidewall blowout because its sidewall ply cords are in close proximity to one another. Such paper is apparently referenced simply because it has diagrams of ply cords with an interply rubber layer. Osborne Affidavit, ¶ 24.

## V.
### Firestone's Campaign Letter Is Irrelevant and does not Relate to any Condition Existing on the Subject Tire

Plaintiff claims she "will introduce evidence that the subject tire was one of a model produced by Defendant that was the subject of a recall at the time the blowout occurred, and that the letter to the NTHA (sic) advising it of the recall listed the reason for the recall as the sudden loss of air in the tires." Plaintiff's Brief in Opposition, p. 17. In fact, Firestone's voluntary campaign letter to NHTSA states the referenced tires "may experience rapid air loss especially **if they have been operated below recommended inflation pressures and above recommended loads or at excessive speeds**." Exhibit 9 to Plaintiff's Index (emphasis added). The letter further states there has **not** been a strong severity trend on this application, and that the referenced tires are not defective and are safe and **perform well under normal operating conditions**. *Id.* Importantly, Osborne admits he did not see any physical evidence on the subject tire indicating it was operated overdeflected (underinflated, overloaded or a combination of the two), either before the subject accident or on the day of the accident, and opines the subject tire was in fact not operated overdeflected, overloaded or underinflated, either before the subject accident or on the day of the subject accident. *See* Osborne Dep., p. 132-36, 253-254. Further, he did not see any evidence of high speed operation on the subject tire, and does not believe the subject tire was operated at high or excessive speeds. *Id.* at 150-51 and 253-254.

Osborne thus admits the conditions outlined in the letter to NHTSA do not exist on the subject tire. *Id.* at 253-254. As Firestone stated in its letter, the referenced tires "are safe and perform well under normal operating conditions." Exhibit 9 to Plaintiff's Index. Further, Osborne admits he is not aware of any other Firestone Steeltex Radial A/T tire of the size and load range involved in this case that sustained a sidewall blowout as a result of an alleged defect in the sidewall ply cords.[4] *Id.* at 282-284.

## VI.
## Michael Reeves' Testimony is no Proof of Defect

Plaintiff claims she will offer the testimony of a witness who "will testify that the subject tire had a hole in the outer sidewall that looked like a blowout." Plaintiffs' Brief in Opposition, p. 17. Plaintiffs attach excerpts from the deposition of Michael Reeves (Plaintiff's son who was a high school student at the time of the accident)[5], apparently the referenced "witness," although Plaintiffs do not actually state who such witness is or even reference the Reeves deposition anywhere in her Brief in Opposition. The Reeves deposition in fact states Mr. Reeves claims he saw "[l]ike a hole, a bleb. I don't know how to explain it." Exhibit 3 to Plaintiffs' Index of Evidentiary Materials in Support of Plaintiffs' Brief in Opposition to Defendant's Motion to Exclude Expert Testimony of David Osborne, p. 19. This testimony is quite different from Plaintiffs' statement that the witness will testify such "hole" looked like a "blowout." Further, Mr. Reeves could not "make out" the claimed "hole" in the photographs of the vehicle taken at the accident scene. Reeves Dep., p. 46-47. Plaintiff has produced no photographs of the alleged hole in the tire after the accident.

---

[4] By definition, a design defect is a defect in the actual design of a tire, such that every tire made to that design specification would have such defect. If the subject tire truly had a design defect, one would expect a high failure rate due to the purported design defect.

[5] *See* Deposition of Michael Reeves ("Reeves Dep."), relevant portions of which are attached as Exhibit "1" to Firestone's Index of Evidentiary Materials in Support of its Reply to Plaintiffs' Brief in Opposition to Defendant's Motion to Exclude Expert Testimony of David Osborne, filed simultaneously with this Reply, p. 5-6, 12-13.

Importantly, Osborne himself testified there is a hole in the subject tire, and admits such damage occurred from the wheel being locked and the tire dragging:

>    Q:    Could you get this kind of damage [a hole] here from the
>          wheel being locked and the tire being drug?
>
>    A:    **Yes. That's what happened**.

Osborne Dep., p. 206 (emphasis added). Mr. Reeves' testimony that he saw a hole in the tire is no evidence of a defect or a tire blowout. Further, even if there were a hole in the tire following the accident, Plaintiff cannot rule out that such hole occurred as a result of accident damage or impact.

## VII.
## Firestone's Disclosure of Claims and Lawsuits is Irrelevant

Plaintiff attaches Firestone's Claims Report for Sidewall Conditions as Exhibit "10" to its Index of Evidentiary Materials in Support of Plaintiffs' Brief in Opposition to Defendant's Motion to Exclude Expert Testimony of David Osborne. This list of claims for sidewall conditions is completely irrelevant. As referenced above, Osborne admits he did not observe any damage on the subject tire's sidewalls other than in the 10 to 70 degrees location where the tire was damaged due to towing after the accident. *Id*. at 170. Osborne claims the tire "blew out" when certain body ply cords allegedly fractured or broke. *Id*. at 204, 207. However, he admits there are no such "fractured" cords which are not abraded such that they can be examined:

>    Q:    Are there any body ply cords in the sidewall of this tire that
>          are fractured and not abraded that we can look at?
>
>    A:    I can't find any, no.

Exhibit A, p. 207. Osborne admits he did not observe any physical evidence of blisters on the sidewall of the tire. *Id*. at 139. Nor did he observe any physical evidence of an open splice in the sidewalls of the subject tire. *Id*. at 139. He did not observe any physical evidence of a

separation between the sidewall rubber and the casing or between the casing and the sidewalls of the subject tire. *Id.* He did not observe any separation between the body plies in the sidewalls of the subject tire. *Id.* at 263. Further, he did not observe physical evidence of any sidewall undulations in the subject tire. *Id.* at 139. Moreover, Osborne cannot identify any body ply cords he believes are fretted as a result of cord-to-cord contact; if he had observed any such fretted cords, he would have so noted in his inspection notes (and he did not). *Id.* at 261-262. There is no evidence the subject tire had a sidewall "condition."

Finally, claims listed on a claim report are not evidence of defect. Simply because a claim is made does not mean the tire which is the subject of the claim is defective and does not indicate the subject tire in this case is defective. Osborne admits there are many different reasons a steel-belted radial tire can sustain a blowout.[6] *Id.* at 212. The mere fact a tire sustains a blowout or sidewall failure does not mean the tire is defective. *Id.* at 212, 219. Nor does the mere fact a tire sustains a sidewall failure, including a sidewall blowout, mean it is defective *per se. Id.* at 212, 219. Osborne agrees a sidewall failure is a condition in the tire resulting from an underlying cause. *Id.* at 219. It is the job of the tire failure analyst to determine what the underlying cause was. *Id.*

Osborne agrees there are reasons other than a defect in a tire that can cause a sidewall blowout in a tire. *Id.* at 212. One could not simply conclude a tire that sustained a sidewall failure, including a sidewall blowout, was defective. *Id.* at 219. Osborne admits a tire can sustain a blowout as a result of an impact that fractures the polyester cords. *Id.* at 213-214. He has seen a tire sustain a blowout as a result of such damage. *Id.* at 214. Osborne also admits a steel-belted radial tire can sustain a sidewall blowout as a result of underinflation. *Id.* He has seen a tire that sustained a sidewall failure as a result of underinflated operation. *Id.* at 217.

---

[6] Firestone maintains the subject tire did not blowout or fail.

Therefore, the list of claims is irrelevant and no evidence of tire defect or tire blowout in the subject tire.

**WHEREFORE, PREMISES CONSIDERED,** Defendant Bridgestone Firestone North American Tire, LLC respectfully requests its Motion to Exclude Expert Testimony of David Osborne and Brief in Support Thereof be granted; that the Court enter an Order excluding or restricting the expert opinion testimony of David Osborne set forth in its Motion and Brief; and for such other relief, both at law and in equity, to which this Defendant may show itself to be justly entitled.

BY  *s/ Scott G. Edwards*, #06461480
Daniel P. Chesire, #15029
LAMSON DUGAN & MURRAY, LLP
10306 Regency Parkway Drive
Omaha, NE 68114
(402) 397-7300
dchesire@ldmlaw.com

and

Scott G. Edwards, Texas Bar #06461480
HARTLINE, DACUS, BARGER,
DREYER & KERN, L.L.P.
6688 North Central Expressway, Suite 1000
Dallas, Texas 75206
(214) 369-2100
sedwards@hdbdk.com

**ATTORNEYS FOR DEFENDANT
BRIDGESTONE FIRESTONE NORTH
AMERICAN TIRE, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of December, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

Timothy J. O'Brien #16011
HAUPTMAN, O'BRIEN, WOLF &
LATHROP, P.C.
1005 South 1078th Avenue, Suite 200
Omaha, NE 68114
ATTORNEY FOR PLAINTIFF

William Frates
830 Azalea Lane
Vero Beach, FL 32963
ATTORNEY FOR PLAINTIFF

*/s/ Scott G. Edwards*, #06461480