IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| DEBRA BLOOMER, Individually, And as Mother and Guardian of JONATHAN BLOOMER, a Minor, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 8:05 CV 503 |
| | ) | |
| BRIDGESTONE FIRESTONE NORTH AMERICAN TIRE, LLC, A Tennessee Limited Liability Company | ) ) ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT BRIDGESTONE FIRESTONE NORTH AMERICAN TIRE LLC'S OMNIBUS MOTION *IN LIMINE* AND BRIEF IN SUPPORT THEREOF

Defendant Bridgestone Firestone North American Tire, LLC ("Firestone") anticipates that plaintiffs, their attorneys, or any of their witnesses (collectively, the "Plaintiffs") may mention or attempt to introduce at trial a variety of evidence and argument that is inadmissible and inappropriate. In order to assure a trial free from error, and to enhance the Court's ability to conduct an efficient trial, Firestone requests that a number of evidentiary issues be addressed before trial. These issues include:

- Firestone's alleged moral or ethical obligations;

- Firestone's insurance coverage/indemnity coverage;

- Commentary relating to negotiations or offers of settlement;

- Improper references to Firestone's attorneys;

- Firestone's Japanese parent company or the nationality of any of its employees;

- Outrageous commentary regarding Firestone;

- The Decatur, Illinois strike and plant closure;

- Evidence regarding design or manufacturing issues unrelated to the alleged failure of the subject tire;

- Press reports and other media coverage;

- Certain so-called "consumer" or "public interest" groups;

- Demands in front of the jury that Firestone produce any document, stipulate to any fact, or make any agreement;

- Statements that Plaintiffs brought suit to enhance consumer safety;

- Statements regarding what Plaintiffs intend to do with the proceeds of any award;

- Reference to discovery disputes and allegations of procedural improprieties;

- Any reference to motions *in limine*;

- Depositions from other cases involving different tires; and

- Firestone's C-95 program.

Firestone recognizes that not all these issues will be readily and fully resolved before trial. Nevertheless, as to those matters that cannot be resolved, Firestone hopes these motions will permit the Court more appropriately to address them within the context of trial.

## FACTUAL BACKGROUND

This case arises from a single-vehicle accident that occurred on November 8, 2001, in Cass County, Nebraska. On that day, Debra Bloomer was driving a 2000 Ford Excursion westbound on "A" Street in Cass County, Nebraska. She was accompanied by her children, Jonathan Bloomer and Kristiina Bloomer. Ms. Bloomer lost control of the vehicle, and the vehicle veered off the south edge of the roadway. The vehicle rolled over and came to rest upright on the roadway near the north edge. Jonathan Bloomer was ejected during the rollover.

Plaintiffs claim the left rear tire allegedly sustained a sidewall blowout. Firestone denies Plaintiffs' claims that the subject tire was defective and/or sustained a sidewall blowout. Plaintiffs have identified the tire that allegedly failed as a LT265/75R16 Load Range "D"

2

Steeltex Radial A/T tire (the "subject tire") manufactured at Firestone's Joliette, Canada plant in the 22nd week of 2000. The type, model, size, plant of manufacture, and date of manufacture are all critical to the determination of what evidence is appropriate and admissible at trial. These facts define a particular product and a set of design and manufacturing conditions relevant to the claims in this case.

Firestone anticipates that Plaintiffs will ignore or blur these distinctions and present evidence regarding a host of different tires, accidents, vehicles, and events wholly unrelated to the design, manufacture, or alleged failure of the subject tire. In addition, Firestone expects that the Plaintiffs may seek to advance their claims and defenses through a wide variety of ill-founded and improper evidence and arguments. For those reasons, as set forth in detail below, Firestone requests an order excluding evidence regarding the following matters:

## ARGUMENT

### I.    FIRESTONE'S ALLEGED MORAL OR ETHICAL OBLIGATIONS

Plaintiffs may refer to or mention purported ethical or moral obligations on the part of Firestone or its employees. Whether Firestone and its employees have any purported ethical or moral obligation is not relevant to the facts in this case or to the applicable law. These "obligations" will not make the existence of any material fact, such as whether the subject tire was defective in manufacture or design as Plaintiffs allege, more or less probable. *See* Fed. R. Evid. 401, 402.

Instead, such references will serve only to confuse the issues and inflame the jury. When presented with these arguments the jury may become distracted from the issues at hand, and simply determine liability based on passion rather than fact. Clearly, given this risk, such statements or arguments are unfairly prejudicial to Firestone and inadmissible. *See* Fed. R. Evid.

3

403. Therefore, because such statements or references are irrelevant and unfairly prejudicial, the Court should exclude them from trial.

## II.    FIRESTONE'S INSURANCE COVERAGE/INDEMNITY COVERAGE

Plaintiffs may attempt to introduce evidence or argument relating to the insurance or indemnity coverage that Firestone could use to pay any award of damages to Plaintiffs. Because this evidence is (1) entirely irrelevant and immaterial to the issues before the Court; (2) is unfairly prejudicial to Firestone; and (3) would likely confuse the issues and mislead the jury, the Court should exclude evidence or arguments related to insurance coverage/indemnity coverage.

Whether a party is insured is generally irrelevant to the outcome of a case, and risks confusion of the issues before the jury. If presented with evidence of insurance coverage, a jury could ignore the facts of a case, and instead award damages since the insurance company would pay any monetary award.[1] *Halladay v. Verschoor*, 381 F.2d 100, 112 (8th Cir. 1967) ("[T]he injection of the insurance or indemnity feature leading to the conclusion that the damages sued for have been or will be taken care of by an insurance or indemnity company is utterly repugnant to a fair trial or to the securing of the rendition of a just verdict."). To protect against this scenario, Fed. R. Evid. 411 prohibits any evidence of insurance coverage on the issue of whether a party acted wrongfully. *See Garnac Grain Co., Inc. v. Blackley*, 932 F.2d 1563, 1570 (8th Cir. 1991) (reversing as improper under Fed. R. Evid. 411 trial court's decision to deny motion in limine to exclude from evidence party's receipt of payment under a two million dollar fidelity bond from its insurer).

---

[1] Indeed, this danger is particularly problematic in personal injury or product liability suits. In such situations, jurors may be swayed out of sympathy for the plaintiff, regardless of whether a defendant is liable. Since an insurance company would potentially pay any damages awarded, a jury may reason that they can compensate an injured plaintiff without directly burdening an innocent defendant.

4

Here, Fed. R. Evid. 411 explicitly bars the admission of evidence regarding Firestone's insurance coverage. This evidence will not assist the jury in any way. Moreover, even if the evidence were admissible under Fed. R. Evid. 411, Firestone's insurance coverage (or lack thereof) does not make any material issue, such as whether the subject tire was defective, more or less probable. Any such evidence is highly irrelevant, unfairly prejudicial, and potentially inflammatory or confusing to the jury, and therefore inadmissible. Fed. R. Evid. 401-03. Accordingly, the Court should exclude it.

## III.   COMMENTARY RELATING TO NEGOTIATIONS OR OFFERS OF SETTLEMENT

Plaintiffs may refer to or mention Firestone's offers or refusals to compromise, settle, contest, or dispose of this action, including any settlement negotiations or mediations. Such evidence is clearly improper under Fed. R. Evid. 408, and the Court should exclude it.

Federal law encourages settlement of disputes. *Reichenbach v. Smith*, 528 F.2d 1072, 1074 (5th Cir. 1976). But to negotiate settlement of a matter, parties must be allowed to speak freely without fear of repercussion. Admission of evidence relating to settlement negotiations would discourage litigants from doing so if statements made during such negotiations were later admissible. *Id.* Accordingly, Fed. R. Evid. 408 expressly prohibits the admission of any statement made in connection with a settlement offer to prove fault or value of a claim. *See Scenic Holding, LLC v. New Bd. of Trs. of the Tabernacle Missionary Baptist Church, Inc.*, 506 F.3d 656, 668 (8th Cir. 2007) (upholding trial court's decision to exclude settlement discussions under Fed. R. Evid. 408); *Greyhound Lines, Inc. v. Miller*, 402 F.2d 134, 139 (8th Cir. 1968) ("It is axiomatic that offers of settlement or compromise absent extraordinary circumstances are inadmissible . . . ."); *see also Fiberglass Insulators, Inc. v. Dupuy*, 856 F.2d 652, 653-54 (4th

5

Cir. 1988) (same). This prohibition includes any evidence of a party's offer or rejection of settlement.

Here, Plaintiffs' reference to any statement by Firestone during settlement negotiations, including any offer or refusal by Firestone to settle this matter, is improper. To adequately protect its interests and advance the Court's interests in settlement, Firestone must be able to negotiate freely without fear of repercussion. Therefore, the Court should exclude any such reference or comment on these subjects under Fed. R. Evid. 408.

## IV.   IMPROPER REFERENCES TO FIRESTONE'S ATTORNEYS

Plaintiffs may refer to or comment about the following topics: (1) that Firestone's attorneys in this lawsuit regularly represent Firestone, other defendants, large corporations, manufacturers, insurance companies, or the like; (2) that Firestone's attorneys specialize in product liability cases or cases involving tire failures or vehicle rollovers; (3) that Firestone's attorneys represent Firestone across the country in lawsuits "just like this one," or the like; and (4) that Firestone's attorneys act as regional, national, or coordinating counsel for Firestone; (5) that Firestone's attorneys are not local practitioners or Nebraskan attorneys; and (6) that Firestone has employed numerous attorneys in its defense of this matter. Any statements regarding Firestone's attorneys are irrelevant and unfairly prejudicial, and therefore the Court should exclude them.

Federal Rules of Evidence 401, 402, and 403 govern the admissibility of statements regarding a party's counsel. To be relevant, any such statement or comment must "hav[e] any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Moreover, even if such statements satisfy the definition of relevancy, their probative value as

6

evidence must not be "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." Fed. R. Evid. 403.

Statements regarding the background or experience of Firestone's counsel would be plainly improper, and intended only to engender unfair prejudice. These statements will not assist the jury in assessing liability or damages, or make any other fact more or less probable. Instead, these statements may cause the jury to focus on Firestone's lawyers, a completely irrelevant topic, instead of the liability and damages issues involved in this case. Given this potential scenario, these statements would only unfairly prejudice Firestone, confuse the issues, and mislead the jury. Given their clear lack of any probative value, the Court should exclude such statements under Federal Rules of Evidence 401, 402, and 403.

## V.   FIRESTONE'S JAPANESE PARENT COMPANY OR THE NATIONALITY OF ITS EMPLOYEES

Plaintiffs may attempt to introduce evidence referring or relating to the citizenship of its foreign parent corporation, Bridgestone Corporation, and to the fact that some Firestone employees have been Japanese nationals. Such references or allusions are inappropriate, and the Court should exclude any such evidence.

Firestone is, and always has been, an American company. Confusion as to its identity may arise because in 1988 it became a separate and distinct corporate subsidiary of Bridgestone Corporation, a Japanese corporation. But Bridgestone Corporation is not a party to this case. It did not design, manufacture, or sell the subject tire. All of those activities were the responsibility of Firestone.

Courts have long held as a "universal rule" that questioning or argument by counsel regarding the nationality of a party, when not an issue in the case, is improper. *See London Guarantee & Accident Co. v. Woelfle*, 83 F.2d 325, 340 (8th Cir. 1936) (holding that remarks

7

regarding nationality of foreign corporations create "hostility" and "are condemned as an appeal to sectional or local prejudice"). Further, the Eighth Circuit in *Gearhart v. Uniden Corp. of America*, 781 F.2d 147 (8th Cir. 1986) squarely addressed the damage caused from the inappropriate reference to a Japanese parent corporation. The court found that the plaintiffs' reference at trial to a foreign parent corporation was improper because: "We believe such repeated references to Far Eastern parent corporations . . . could prejudicially appeal to xenophobia." *Id.* at 153. Indeed, the Supreme Court of New Hampshire, in *LeBlanc v. Am. Honda Motor Co.*, 688 A.2d 556 (N.H. 1997), reversed a verdict for the plaintiff due to prejudicial statements directed toward Honda's Japanese ownership by plaintiff's counsel. The court recognized the impropriety of counsel's efforts to unfairly prejudice the jury against the defendant based on its Japanese ownership:

> We do not expect advocacy to be devoid of passion. But jurors must ultimately base their judgment on the evidence presented and the natural inferences therefrom. Thus, there must be limits to pleas of pure passion and there must be restraints against blatant appeals to bias and prejudice. . . . A mistrial or a new trial may be warranted where counsel attempts to appeal to the sympathies, passions, and prejudices of jurors grounded in race or nationality . . . .

*Id.* at 560 (citations omitted).

The rationale of *Gearhart* and *LeBlanc* applies here. Bridgestone Corporation did not design, manufacture, or sell the subject tire. It is not a party to this case. Comments regarding Bridgestone Corporation will not assist the jury in evaluating the various questions or facts in this case. Given all this, it is clear that any mention of Bridgestone Corporation or the nationality of Firestone employees would be nothing more than a poorly veiled attempt to stir xenophobic fears in the jury. Any such references are irrelevant, lack probative value, and would only unfairly prejudice Firestone. Thus, the Court should exclude all references to

Firestone's foreign parent company, Bridgestone Corporation, the nationality of Bridgestone Corporation or Firestone's employees, or Bridgestone Corporation's role in this action.

## VI.    OUTRAGEOUS COMMENTARY REGARDING FIRESTONE

Plaintiffs may make inflammatory comments in a misguided effort to equate Firestone's conduct or its tires with criminal acts such as murder. These comments may include statements that the subject tire is a "killer tire," "death tire," "widow maker," or any other similarly disparaging labels. Further, these comments may extend beyond the subject tire to Firestone products in general. Such evidence has no place in this matter, and the Court should exclude it at trial.

Obviously, Plaintiffs' use of such inflammatory language would be an effort to condition the jurors and unfairly prejudice Firestone. These terms are not relevant to any issue. They will not assist the jury in determining the relevant issues in this matter, and therefore are irrelevant. *See* Fed. R. Evid. 401, 402. Further, labels such as "death tires" may strike an emotional chord with the jury, and may distract the jury, from its duty of fairly weighing all relevant evidence. The risk of issue confusion and unfair prejudice clearly outweighs any probative value in such inflammatory statements. *See* Fed. R. Evid. 403.

Therefore, because such commentary is (1) entirely irrelevant and immaterial to the issues before the Court; (2) unfairly prejudicial to Firestone; and (3) likely to confuse and mislead the jury, the Court must exclude such outrageous commentary at trial.

## VII.    THE DECATUR, ILLINOIS STRIKE AND PLANT CLOSURE

Plaintiffs may attempt to introduce evidence or argument regarding a workers' strike at Firestone's former Decatur, Illinois plant in 1994 and 1995, or refer to the decision to close the Decatur plant in October, 2001. The Decatur plant strike and closing are entirely irrelevant to any issue in this matter, and therefore the Court should exclude it.

9

The subject tire was manufactured during the 22nd week of 2000 in Joliette, Canada, both a time and place remote from the Decatur strike or closing. No evidence in this case relates the alleged failure of the subject tire to either the strike or the closing. Consequently, commentary or evidence regarding the Decatur strike or closing will not assist the jury in determining liability in this case. *See* Fed. R. Evid. 401, 402. To the contrary, such commentary will only confuse the issues and unfairly prejudice Firestone by injecting completely irrelevant events into this controversy. Therefore, the Court may properly exclude any evidence of the strike or closing on those grounds as well. *See* Fed. R. Evid. 403.

Accordingly, the Court should exclude any reference to or evidence involving Firestone's Decatur plant closing or the workers' strike at the Decatur plant. Any evidence regarding these events is highly irrelevant, confusing, and unfairly prejudicial.

## VIII.   EVIDENCE REGARDING DESIGN OR MANUFACTURING ISSUES UNRELATED TO THE ALLEGED FAILURE OF THE SUBJECT TIRE

Firestone requests an order excluding Plaintiffs from referring, directly or indirectly, or presenting evidence of any alleged defect in the subject tire not timely disclosed by Plaintiffs. Fed. R. Civ. P. 37(c)(1).

Firestone anticipates that Plaintiffs may attempt to create an inference that certain design or production conditions or changes adversely impacted the performance of the tire, without linking these conditions and their experts' disclosed opinions as to the cause of the alleged failure of the subject tire. Plaintiffs hope to create an inference that these conditions or changes adversely impacted the performance of the tire. This type of "throw it all at the wall and see what sticks" tactic should not be permitted.

Argument by Plaintiffs' counsel cannot substitute for the required expert opinion. For these reasons, the Court should prevent counsel from offering evidence or eliciting any testimony

10

regarding the design or manufacture of the tire unrelated to the alleged cause of the alleged failure of the subject tire. Such testimony is completely irrelevant.

Even if it were relevant, it should be excluded on Rule 402 and 403 grounds. If the Court allows such evidence, Firestone will be forced to conduct a "mini trial" on each of the conditions to demonstrate to the jury that they did not contribute to the alleged failure of the subject tire. Such a process would be confusing to the jury, and would unnecessarily waste trial time. Moreover, such evidence would be unfairly prejudicial.

Accordingly, Firestone requests that Plaintiffs' experts be prevented from commenting upon or criticizing any design or manufacturing issues that have not been specifically linked to the alleged failure of the subject tire, and/or timely disclosed, nor should the parties' counsel be permitted to elicit testimony or argument on such issues.

## IX.      PRESS REPORTS AND OTHER MEDIA COVERAGE

Plaintiffs may attempt to introduce evidence or testimony concerning various newspaper, magazine, journal, or other periodical articles; television or radio media coverage; or internet website coverage addressing Firestone activities over the last several years. This coverage may include evidence or commentary regarding Firestone's voluntary tire recall, the National Highway Traffic and Safety Administration ("NHTSA") investigations of Firestone tires, other Firestone tires, other tire litigation, or any other accidents allegedly involving Firestone tires. These press reports and media accounts are prejudicial hearsay, and are therefore inadmissible.

### A.      Press Reports and Other Media Coverage are Plainly Hearsay

Press reports and media coverage are hearsay and inadmissible for any relevant purpose in this case. *See* Fed. R. Evid. 801, 802, 805; *see, e.g., Perry v. Kemna,* 356 F.3d 880, 889 (8th Cir. 2004) (noting that newspaper articles were hearsay and also unrelated to proceedings);

11

*Miller v. Tony & Susan Alamo Found.*, 924 F.2d 143, 147 (8th Cir. 1991) (describing newspaper articles submitted in support of a motion for recusal as "rank hearsay and demonstrably inaccurate); *In re Acceptance Ins. Cos., Inc. Sec. Litig.*, 352 F. Supp. 2d 940, 950 (D. Neb. 2004) (striking a newspaper article included as an exhibit to a summary judgment motion as inadmissible hearsay); *see also Larez v. City of Los Angeles*, 946 F.2d 630, 642 (9th Cir. 1991); *New England Mut. Life. Ins. Co. v. Anderson,* 888 F.2d 646, 650-51 (10th Cir. 1989) (holding that neither the "equivalent circumstantial guarantees of trustworthiness" necessary to support admission of the article under the rule, nor that admission of the article without an opportunity to cross-examine its author would have served the interests of justice).

The underlying policy of the hearsay rule is to exclude unreliable evidence. *See, e.g.*, *Sam's Club v. NLRB*, 173 F.3d 233, 241 (4th Cir. 1999). Press reports and other media coverage regarding Firestone Wilderness AT and Radial ATX tires on Ford Explorers, which are not even involved in this case, has been extensive and has been gathered from various persons and numerous "sources." The reporters of this information are not available for cross-examination, nor are the persons the authors purport to "quote."

In fact, the press and media accounts often contain *multiple* layers of hearsay, written by those who have either little or no personal knowledge, in reliance on other, often unidentified sources. The accounts of these sources may be filtered through advertent or inadvertent biases or through journalistic sensationalism. Therefore, the Court should exclude press reports and media coverage since it is clearly unreliable and inadmissible hearsay.

### B.     Press Reports and Other Media Coverage is Unfairly Prejudicial

Even if this evidence were admissible, the Court should exclude it under Federal Rule of Evidence 403, because of its unfairly prejudicial nature. Unfortunately, too many people,

including jurors, uncritically believe what they read, especially if a publication they trust prints it, a television show they regularly watch broadcasts it, or their favorite reporter reports it.

There is a clear danger, therefore, that the unverified allegations and conclusions contained in press reports and other media coverage, including accounts of other injured people, will improperly influence the jury. This Court should not allow the deliberative process and function of the jury, including its obligation to weigh only the admissible evidence presented at trial, to be replaced by editorialized and often biased media accounts. Such unfairly prejudicial "evidence" has no place in Court, and the Court should exclude it under Federal Rules of Evidence 403.

### C.    Conclusion

Press reports and other media coverage addressing Firestone activities are completely irrelevant to this proceeding. Many of these reports involve tires other than the subject tire and concern events completely unrelated to the facts of this case. The accuracy of these reports is impossible to verify, and the reports are clearly inadmissible hearsay. Moreover, even if these reports were admissible under recognized hearsay exceptions, their probative value is heavily outweighed by the risk that they will confuse the issues or unfairly prejudice Firestone. Therefore, the Court should exclude any evidence or testimony concerning press reports or other media coverage addressing Firestone activities.

### X.    CERTAIN SO-CALLED "CONSUMER" OR "PUBLIC INTEREST" GROUPS

Plaintiffs may attempt to introduce into evidence or refer to articles, reports, statements, press releases, or other materials generated by purported "public interest" and "consumer group" organizations such as Public Citizen, Consumers Union, Tire Action Group, and Safetyforum.com. These groups pose as objective outside agencies that collect and share data.

13

But in fact, these groups are and generate materials that are merely camouflaged advertisements for personal injury attorneys attempting to try their cases in the "court of public opinion." The materials generated by organizations are irrelevant and unfairly prejudicial, and the Court should exclude their admission at trial.

### A.   Public Interest and Consumer Group Statements are Irrelevant

Almost without exception, public and interest group statements shed absolutely no light on the specific issues in this case. These materials contain no information regarding the individual accident before the Court or involve the particular tire in question. To the contrary, they merely repeat rumors, innuendo, assumptions, and other alleged "facts" regarding Firestone or other accidents involving other Firestone tires. The public interest and consumer group statements speak generally of a false "danger" from Firestone tires in an effort to drum up additional litigation business.

These statements and reports are irrelevant because they do not tend to make the existence of any consequential fact more or less probable. *See, e.g., Dillon v. Nissan Motor Co.*, 986 F.2d 263, 270 (8th Cir. 1993) (upholding the exclusion of *Consumer Reports* of the same product); *see also Conques v. Wal-Mart Stores. Inc.*, 779 So.2d 1094, 1098-99 (La. Ct. App. 2001) (excluding consumer report as irrelevant because it did not involve specific product and premises at issue in the case before the court). Accordingly, the Court should exclude them as irrelevant evidence. Fed. R. Evid. 401, 402.

### B.   Any Probative Value of Statements by Special Interest Groups is Substantially Outweighed by the Danger of Unfair Prejudice, Confusion, and Undue Delay

Federal Rule of Evidence 403 provides that a court may exclude otherwise relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice. The

14

probative value of any statements by special interest groups is minimal. For example, in its own words, "Safetyforum.com does not warrant or guarantee the accuracy, completeness, adequacy, or currency of the information contained in or linked to SafetyForum.com." http://www.safetyforum.com/term.html. On the other hand, the likelihood of unfair prejudice, confusion, and misleading the jury is enormous. The names of these groups might lead jurors to believe they are independent public interest groups. They are, in fact, special interest organizations often founded or funded by plaintiffs' personal injury lawyers. These organizations lack credibility and are biased. Further, Firestone will be unfairly prejudiced if the propaganda of these groups is admitted into evidence because there is no opportunity for cross-examination to uncover the truth behind their representations. Therefore, the Court should exclude any statements, articles, reports, press releases or other materials generated by these organizations under Federal Rule of Evidence 403.

>            **C.      Statements by These Special Interest Groups are Inadmissible
>                     Hearsay and Unfounded "Expert" Opinion Evidence**

In every instance these media reports and interest group statements are plainly hearsay, inadmissible for any relevant purpose. *See Perry v. Kemna*, 356 F.3d 880, 889 (8th Cir. 2004) (holding newspaper articles as necessarily hearsay); *In re Acceptance Ins. Co. Inc. Sec. Litig.*, 352 F. Supp. 2d 940, 950 (D. Neb. 2004) (striking newspaper articles as hearsay and double hearsay); *see also Marsee v. United States Tobacco Co.*, 866 F.2d 319, 325 (10th Cir.1989) (refusing to allow two scientific reports offered on the issue of causation in a products liability case against a snuff tobacco manufacturer because "[n]either document reflects the findings of a governmental agency authorized by law to report on the adverse health effects of smokeless tobacco"); *Dallas County v. Commercial Union Assurance Co.*, 286 F.2d 388, 391-92 (5th Cir. 1961) ("Of course, a newspaper article is hearsay, and in almost all circumstances is

15

inadmissible."). In fact, the media and public interest group statements and accounts often contain *multiple* layers of hearsay, written by those who have either little or no personal knowledge, in reliance on statements and information provided by others.

Given the unreliable and irrelevant nature of this hearsay evidence, this Court should exclude all evidence of or reference to articles, reports, statements, press releases, or any other materials generated by or related to "public interest" and "consumer group" organizations.

## XI. DEMANDS IN FRONT OF THE JURY THAT FIRESTONE PRODUCE ANY DOCUMENT, STIPULATE TO ANY FACT, OR MAKE ANY AGREEMENT

Plaintiffs may attempt to demand or request, in the presence of the jury, that Firestone or its attorneys (1) produce documents or instruments contained in the files of Firestone or its attorneys; (2) stipulate to any fact; or (3) make some sort of agreement as to the facts or circumstances of the case. In addition, Plaintiffs may suggest that they requested certain documents or information from Firestone, but never received them.

All discovery issues are a matter for the Court, and any mention of discovery or objections to discovery are irrelevant, and therefore inadmissible, to the issues before the jury. Fed. R. Evid. 402. Moreover, any such statements in front of the jury would be unfairly prejudicial to Firestone and confuse the issues. These statements would perpetuate the myth that Firestone has something to hide in this matter. To the contrary, Firestone has properly conducted itself through this entire litigation. Accordingly, given the irrelevant, prejudicial, and confusing nature of these statements, the Court should exclude them from trial.

## XII. STATEMENTS THAT PLAINTIFFS BROUGHT SUIT TO ENHANCE CONSUMER SAFETY

Plaintiffs may argue that they brought this suit against Firestone to enhance or establish consumer safety standards with respect to Firestone's products. Plaintiffs' motives are entirely

16

irrelevant and immaterial to the issues before the Court, is unfairly prejudicial to Firestone, and would likely confuse the issues and mislead the jury. Therefore, the Court should exclude such evidence or arguments.

Regardless of any purported altruistic purpose Plaintiffs may have had in filing this suit, such purpose is neither relevant to, nor probative of, any facts or issues in this case, and is therefore inadmissible. *See* Fed. R. Evid. 401, 402. Further, such statements are inadmissible because they are unfairly prejudicial and nothing more than improper attempts by Plaintiffs to garner the sympathy of the jury. *See* Fed. R. Evid. 403. The only purpose of such statements would be to convince the jury to award a higher damage award under the guise of benefiting the greater public good. In *St. Cyr v. Flying J. Inc.*, No. 3:06-cv-13-J-33TEM, 2007 WL 2729584 (M.D. Fla. Sept. 18, 2007), the court excluded such statements where the plaintiffs did not agree to refrain from discussing consumer safety as the purpose of the lawsuit:

> [I]t is appropriate to employ Federal Rule of Evidence 403 to bar Plaintiffs from asserting that this lawsuit was brought for the purpose of improving consumer safety. This Court agrees with Defendant's statement that, "[w]hen faced with the concept that jurors have a role or duty in promoting safety, a juror may be more likely to turn a blind eye to the evidence presented in the case and to decide the matter based on sympathy or emotion. . . ." [S]uch remarks carry a danger of unfair prejudice to Defendant that substantially outweighs the probative value (if any) inherent in such statements. Accordingly, Plaintiffs are prohibited from asserting that this lawsuit was brought for the purpose of protecting the public, enhancing consumer safety, or other similar remarks.

*Id*. at *3.

The *St. Cyr*'s court's same rationale applies here. Plaintiffs' purposes for bringing this suit is irrelevant, unfairly prejudicial, and would only confuse the issues for trial. Its only purpose would be to inflame the jury and misdirect them from the true issue in this case: whether the subject tire was defective. Accordingly, the Court should exclude any evidence or argument

17

suggesting that Plaintiffs brought the instant litigation in order to enhance consumer safety be excluded.

## XIII. STATEMENTS REGARDING WHAT PLAINTIFFS INTEND TO DO WITH THE PROCEEDS OF ANY AWARD

Plaintiffs may comment as to what they intend to do with the proceeds of any award they might receive in this litigation. Such commentary is entirely irrelevant, confusing, and unfairly prejudicial. Therefore, the Court should exclude it.

Regardless of Plaintiffs motives for filing suit, their motives are completely irrelevant. Plaintiffs' motives will not assist the jury in determining whether the subject tire was defective, nor will it assist the jury in determining whether the subject tire caused Plaintiffs' accident. *See* Fed. R. Evid. 401, 402. Moreover, any statement regarding Plaintiffs' motives are nothing more than unfairly prejudicial and improper attempts to garner the sympathy of the jury. *See* Fed. R. Evid. 403. Thus, the Court should exclude any such evidence under Federal Rules of Evidence 402 and 403.

## XIV. REFERENCE TO DISCOVERY DISPUTES AND ALLEGATIONS OF PROCEDURAL IMPROPRIETIES

Plaintiffs may claim that Firestone has engaged in misconduct during the discovery phase of this or any other product liability case. This alleged "misconduct" may include pretrial disputes, adequacy of pretrial discovery responses, depositions, other discovery issues, or protective orders. Any comments or claims relating to discovery disputes involving Firestone is clearly irrelevant, confusing, and prejudicial.

Discovery closed several months ago. Plaintiffs have not made a single allegation or suggestion that Firestone has failed to comply with any discovery obligation. There are no discovery motions pending. The time has passed for Plaintiffs to "put up or shut up" about any discovery or procedural issues. In addition to being factually untrue, such statements or

18

references would be wholly irrelevant in this case and would serve only to prejudice Firestone. Any such statements or references are not relevant to the defect allegations made by Plaintiffs and could only be made for the improper purpose of inflaming the jury. Therefore, the Court should exclude any such evidence or comments under Federal Rules of Evidence 401, 402, and 403.

## XV. ANY REFERENCE TO THE MOTIONS *IN LIMINE*

Plaintiffs may refer to Firestone filing various motions in *limine* to exclude certain evidence or testimony, and the Court's rulings on those motions. Such statements or references would not be relevant to or probative of any facts or issues in this case. *See* Fed. R. Evid. 401, 402. Rather, they would be confusing and prejudicial. Fed. R. Evid. 403.

In addition, Firestone requests an instruction that no mention or reference be made about or the content of the pleadings, motions, or other matters filed by Firestone. Any attempt to introduce such references into this case would be irrelevant and unfairly prejudicial, and therefore, the Court should exclude them. *Id.*

## XVI. DEPOSITIONS FROM OTHER CASES INVOLVING DIFFERENT TIRES

Plaintiffs may try to offer into evidence testimony from depositions taken as part of other litigation. But, those depositions are inadmissible for numerous reasons. First, since the depositions involve different tires, vehicles, and accidents, the testimony is irrelevant, unfairly prejudicial, and misleading. Moreover, these depositions are hearsay and are not admissible under any hearsay exception. Since these depositions involve different products and issues, Firestone did not have an opportunity or a "similar motive" to develop the testimony of these witnesses, therefore these depositions are not admissible as former testimony under Federal Rule of Evidence 804(b)(1). Nor do these depositions qualify as statements of a party opponent under Federal Rule of Evidence 90.801(d)(2) since many of the deponents were not Firestone

19

employees. And even in cases where the deponents were Firestone employees, their testimony is not within the scope of their employment or agency. Therefore, given that these depositions from other cases are irrelevant, misleading, and unfairly prejudicial heresy, the Court should exclude them.

### A. Depositions from Other Cases are Irrelevant.

Testimony from other litigation involving different products and issues is irrelevant should be excluded under Federal Rule of Evidence 402. Additionally, statements relating to other products taken from extensive testimony relating to very dissimilar circumstances and events would unfairly prejudice Firestone and would create undue confusion and delay. Even beyond the very real potential that the jury might be misled into concluding that the testimony had direct application to the subject tire, Firestone would be forced to call additional witnesses and provide additional context in an effort to dispel any such improper conclusions. This would be patently unfair and unnecessarily prolong the trial of this case. Such testimony is plainly inadmissible under Federal Rule of Evidence 403.

### B. Depositions from Other Cases are not Former Testimony

The depositions from these other cases do not qualify as admissible former testimony under Federal Rule of Evidence 804(b)(1). Federal Rule of Evidence 804(b)(1) provides for the admission of former testimony only if the witness is unavailable and "if the party against whom the testimony is now offered . . . had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." These prior depositions do not meet these requirements.

Firestone did not have the same motive to develop the testimony of these deponents when the depositions were taken as it would have been if the depositions had been taken in this case.

*See Black Hills Jewelry Mfg. Co. v. Gold Rush, Inc.*, 633 F.2d 746, 752–53 (8th Cir. 1980) (holding that prior testimony was inadmissible because similar motive was not shown); *see also Murphy v. Owens-Illinois, Inc.*, 779 F.2d 340, 343-44 (6th Cir. 1985) (affirming exclusion of deposition testimony from prior asbestos case based upon differences in dates when products were manufactured, which resulted in dissimilar motive to examine witness regarding the applicable "state of the art"). Firestone had no motive to examine these deponents about the subject tire as that tire type was simply not at issue in the prior cases. And clearly, Firestone had no opportunity to question the deponents about the specific alleged tire failure and accident at issue in this case. Under these circumstances, the requirements of Federal Rule of Evidence 804(b)(1) are not met, and these depositions should be excluded as inadmissible hearsay.

### C. Depositions from Other Cases are not Admissions of a Party Opponent.

Plaintiffs may argue that these depositions are admissible as statements of a party opponent under Federal Rule of Evidence 801(d)(2). But the depositions are not subject to such easy and wholesale admission under this rule. Rule 801(d)(2) provides an exception to the hearsay rule for a "statement [that] is offered against a party and is . . . (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship . . . ." However, admitting the depositions under this section would be improper for a number of reasons.

First, a number of the deponents were not, and never have been, employees of Firestone. Their depositions, therefore, could not possibly qualify for admission under Federal Rule of Evidence 801(d)(2). But more importantly, Plaintiffs face significant restrictions on the admissibility of testimony from even those individuals who are or were former employees of Firestone.

21

Testimony from employees may be admitted only in circumstances in which they are speaking about matters within the scope of their agency or employment. Fed. R. Evid. 801(d)(2); *Ahlberg v. Chrysler Corp.*, 481 F.3d 630, 636 (8th Cir. 2007) (affirming exclusion of statements outside declarant's scope of employment); *see also Wilkinson v. Carnival Cruise Lines, Inc.*, 920 F.2d 1560, 1565 (11th Cir. 1991). The rule requires that the proffering party lay foundation establishing that an otherwise excludable statement relates to some matter that was within the scope of that agent's employment. *Ahlberg*, 481 F.3d at 636; *Gulbranson v. Duluth, Missabe & Iron Range Ry. Co.*, 921 F.2d 139, 142 (8th Cir. 1990); *see also Sea-Land Service, Inc. v. Lozen Int'l, LLC*, 285 F.3d 808, 821 (9th Cir. 2002). The proffering party bears the burden of introducing evidence establishing this threshold requirement. *Ahlberg*, 481 F.3d at 636; *Gulbranson*, 921 F.2d at 142; *see also*, *United States v. Chang*, 207 F.3d 1169, 1176-77 (9th Cir. 2000).

Of course, to qualify at all under Federal Rule of Evidence 801(d)(2), the witness must have been a Firestone employee *at the time of his deposition*. Prior testimony of *former* employees is not admissible, even when they testify about events, conditions, or knowledge they gained while employed at the company. *See Ahlberg*, 481 F.3d at 636 (providing that statement must be made during the existence of the employment relationship to be admissible); *see also Coleman v. Wilson*, 912 F. Supp. 1282, 1296 (E.D. Cal. 1995) *appeal dismissed* 101 F.3d 705 (9th Cir. 1996). Therefore, any deposition from another case where the deponent was not an employee at the time of his deposition is inadmissible.

### D. Conclusion

Depositions from other cases have no place at trial as they are clearly inadmissible. Many of the depositions involve different tires, vehicles, and accidents, and are therefore

22

irrelevant, misleading, and prejudicial. In addition, these depositions are clearly inadmissible hearsay. Therefore, the Court should exclude the introduction of depositions from other cases.

## XVII. FIRESTONE'S C-95 PROGRAM

Plaintiffs may attempt to introduce evidence regarding Firestone's C-95 program. C-95 was introduced in July, 1994 to reengineer the corporation and enhance productivity, efficiency, and standardization. The C-95 program involved virtually every area of the corporation, and was driven by extensive analysis and scientific testing. Firestone's desire to make the company more efficient and profitable through the C-95 program is an example of good corporate governance. Although Plaintiffs may contend that these activities had a negative effect on product performance, every measure of hard data shows otherwise.

Plaintiffs may attempt to introduce evidence concerning the C-95 program generally, and then ask the jury to jump to the conclusion that one or more C-95 activities negatively affected tire performance. But to establish the relevancy of the C-95 program, the Plaintiffs and their experts must first identify a specific activity within the program causally connected to the alleged failure of the subject tire. Plaintiffs have not, and cannot, identified any C-95 activity as having a causal connection to the subject tire's performance or the alleged failure in this case. Further, the subject tire was manufactured in 2000, long after the C-95 program came to an end. Therefore, any evidence of the C-95 program is inadmissible. Fed. R. Evid. 402, 403.

Even if information regarding the C-95 program was relevant, such evidence should be excluded under Federal Rule of Evidence 403. Any attempts to introduce such information would only engender unfair prejudice against Firestone and mislead the jury. Firestone requests that this Court enter an Order precluding the introduction of any evidence, or any reference to, the C-95 program.

23

## CONCLUSION

For all of the reasons provided in this memorandum, Firestone respectfully requests that this Court grant the motions *in limine* contained herein and enter an Order excluding all references by the Plaintiffs to the matters set forth above.

BRIDGESTONE FIRESTONE NORTH
AMERICAN TIRE, LLC,
Defendant,

By:  /s/  Scott G. Edwards
Scott G. Edwards, TX Bar #06461480
Hartline, Dacus, Barger, Dryer & Kern, LLP
6688 North Central Expressway, Suite 1000
Dallas, TX 75206

and

Daniel P. Chesire, #15029
LAMSON, DUGAN & MURRAY, LLP
10306 Regency Parkway Drive
Omaha, NE 68114
Telephone:  (402) 397-7300

and

Marc R. Brosseau, Esq., CO Bar #7415
KERR BROSSEAU BARTLETT O'BRIEN, LLC
1600 Broadway, Suite 1600
Denver, CO  80202

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that he served a true and correct copy of the above and foregoing document by ECF electronic filing this 29th day of August, 2008 on the following:

Timothy J. O'Brien
HAUPTMAN, O'BRIEN, WOLF & LATHROP, P.C.
1005 S. 107TH Ave., Suite 200
Omaha, NE 68114

William Frates, II
830 Azalea Lane
Vero Beach, FL 32963

/s/ *Scott G. Edwards*

# 5560772_v1

25